# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID J. BENING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:90-CV-1798 CAS |
| | ) | |
| ARTHUR G. MUEGLER, JR., et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| FREDA BROCKMAN, DONALD NANGLE, | ) | |
| JEANNE NANGLE, and W. DAVID | ) | |
| BLACKWELL, | ) | |
| | ) | |
| Garnishees. | ) | |

## MEMORANDUM AND ORDER

This closed case is before the Court on the First Amended Motion for Creditor's Bill and Equitable Garnishment filed by plaintiffs David J. Bening; Bernice Harre, Shirley Ann Hardin, and Sharon Mewes, as successors of plaintiff Alfred W. Harre, deceased; and Bernice Harre (collectively "plaintiffs"). Plaintiffs seek an Order from the Court, among other things, imposing a $233,700.00 judgment lien on several properties recently bought by garnishee Jeanne Nangle, a debtor of deceased judgment debtor defendant Arthur Muegler, Jr. The motion is opposed by garnishees Donald and Jeanne Nangle ("Nangle garnishees") and garnishee the City of Fenton (the "City"). For the following reasons, the motion will be granted to the extent it seeks a finding that garnishee Jeanne Nangle violated the preliminary order in aid of execution and of creditor's bill and equitable garnishment, and denied in all other respects. Plaintiffs will be ordered to file a motion for contempt and for sanctions.

**I.    Background**

This case dates back to 1990, and the current motion concerns a preliminary order in aid of execution and of creditor's bill and equitable garnishment, which was issued on February 23, 1999. The history of this proceeding is complex and spans two decades and several courts. At bottom it is a collection case in which plaintiffs seek from garnishees Donald and Jeanne Nangle the contingency fee the Nangles owed to defendant Arthur G. Muegler, Jr. arising out of his successful representation of them in a Missouri state court lawsuit captioned Nangle v. Brockman.

On September 21, 1990, plaintiffs David J. Bening and Alfred W. Harre (now deceased) sued defendant Arthur G. Muegler, Jr. (now deceased) for fraud, among other things. On January 23, 1996, a jury awarded plaintiffs Bening and Harre separate judgments against defendant Muegler, each in the sum of $260,000.00. These judgments remained unsatisfied for several years. Plaintiffs represent, without offering any calculation, that as of March 7, 2014, the principal and interest remaining due on the judgments is approximately $421,161.00. (Pls.' Mot. at ¶ 3).

Plaintiffs' attempts to collect on the judgments were thwarted by various fraudulent transfers of defendant Muegler and garnishee Donald Nangle. See Prelim. Order in Aid of Execution and Creditors Bill and Equitable Garnishment ("preliminary order in aid of execution"), Doc. 313. On February 23, 1999, the Court found that defendant Muegler had conveyed various properties and entered into various sham transactions in an intentional effort to frustrate plaintiffs' efforts to collect their judgments. Id. On that same date, the Court issued the preliminary order in aid of execution. The order stated that defendant Muegler was the attorney of record representing Donald Nangle in a suit Mr. Nangle had brought in state court against Freda Brockman, Nangle v. Brockman. Mr. Nangle had received a judgment in that case of $117,598.08, and the Court found that defendant

Muegler was to receive a contingency fee from the proceeds of this judgment. The Court found that plaintiffs Bening and Harre were entitled to "levy, attach and seize" all of defendant Muegler's rights to the judgment in the <u>Nangle v. Brockman</u> lawsuit. <u>See</u> Doc. 313. These proceeds had been purportedly assigned to Nangle's wife, Jeanne Nangle, "in a transparent and disingenuous attempt to circumvent plaintiffs' [Bening and Harre's] collection of the judgment." <u>Id.</u> at 3. The preliminary order in aid of execution stated at paragraph two:

> Except as set forth herein, Defendant Muegler and Garnishees [Donald and Jeanne Nangle] are temporarily and preliminarily enjoined and prohibited from obtaining or receiving any money, property, funds or any other value from Garnishee Brockman or from any other party in satisfaction of the aforesaid judgment entered in <u>Nangle v. Brockman</u> lawsuit[.]

<u>Id.</u> at ¶ 2. These findings of the Court were upheld by the Eighth Circuit on appeal. <u>See</u> <u>Kell v. First Colony Life Ins. Co.</u>, 168 F.3d 494 (8th Cir. 1998) (unpublished per curiam) ("The District Court did not clearly err in finding that the [attorney compensation] agreement was an attempt to obscure the attorneys' [Muegler and Nangle's] actual fee-splitting arrangement.").

As it happened, garnishees Donald and Jeanne Nangle had attempted to seize certain real property owned by their judgment debtor Freda Brockman, which was to be sold at an impending public auction. The proceeds of this auction were to be given to the Nangles in execution of Mr. Nangle's judgment against Ms. Brockman. Because of the fraudulent transactions between Muegler and the Nangles, plaintiffs Bening and Harre had moved this Court for an injunction to prohibit the Nangles and Mr. Muegler from receiving any proceeds from the sale. <u>See</u> Doc. 312. In its preliminary order in aid of execution, the Court granted plaintiffs' motion and enjoined and prohibited Ms. Brockman from paying any money to the Nangles or to Muegler in satisfaction of the judgment in <u>Nangle v. Brockman</u>. Instead, any and all proceeds of the sale of the real property

were to be paid into the Registry of this Court, presumably to be turned over to plaintiffs Harre and Bening.

*Donald Nangle's Bankruptcy*

To understand some of the later property issues, the Court must follow the Nangle v. Brockman judgment through Donald Nangle's bankruptcy proceeding. On February 17, 2000, Donald Nangle filed a Petition under Chapter 7 of the Bankruptcy Code. On February 17, 2001, the then-bankruptcy trustee, Kathy A. Surratt-States (now U.S. Bankruptcy Judge Surratt-States) filed a complaint against Donald Nangle and his wife, Jeanne Nangle. The trustee's complaint sought avoidance of two fraudulent transfers: (1) Donald Nangle's transfer to Jeanne of his interest in their home; and (2) Donald Nangle's assignment of the $107,445.00 judgment obtained against Freda Brockman.[1] Apparently Mr. Nangle had attempted to keep the judgment against Ms. Brockman alive by having it assigned to his wife, Jeanne, pre-bankruptcy.

To settle this complaint brought by the trustee, the trustee and Jeanne Nangle agreed to transfer the Freda Brockman judgment to the trustee. The settlement agreement outlined the division of any proceeds from the sale of the judgment or any collections on the judgment received by the trustee. See Nangle v. Surratt-States, 288 B.R. 213, 215 (B.A.P. 8th Cir. 2003). On September 12, 2002, as part of the settlement, Jeanne Nangle assigned the Brockman judgment to trustee Surratt-States. The settlement agreement provided Jeanne Nangle the right to request that the bankruptcy court appoint special "collection counsel" for the trustee to pursue collection of the judgment at any time after one year from the date of the execution of the settlement agreement. See id. at 218.

---

[1] The $117,598.08 judgment in Nangle v. Brockman was reduced on appeal.

Donald Nangle appealed the bankruptcy court's order setting aside the two fraudulent transfers. On January 6, 2003, Chief Judge Kressel of the United States Bankruptcy Appellate Panel of the Eighth Circuit issued an opinion. The opinion reaffirmed the earlier decision of this Court regarding the assignment of the Brockman judgment from Donald Nangle to his wife, Jeanne, stating that the Nangles could not gain possession of funds arising out of an execution sale of the Freda Brockman property. Id. at 218. In the same opinion, Judge Kressel approved the settlement agreement originated by the bankruptcy trustee in which Jeanne Nangle had a right to request the bankruptcy court to appoint a special "collection counsel" for the trustee to pursue collection of the Brockman judgment "at any time after one year from the date of execution of the settlement agreement." Id. at 219.[2]

On January 13, 2009, Leslie A Davis, successor trustee to Kathy A. Surratt-States, assigned the Brockman judgment back to Jeanne Nangle.[3] Beginning February 2010, Jeanne Nangle filed a number of executions and levies through the Sheriff's Office against properties owned by Ms.

---

[2]The trustee noted the following obstacles to collecting the Brockman judgment: the preliminary order in aid of execution in this case dated February 23, 1999; the separate bankruptcy of Arthur Muegler, Jr., and the fact that [as of 2003] the Brockman judgment was over six years old and neither the debtor, Jeanne Nangle, nor the trustee had received any payments or recovery with respect to it. Nangle v. Surratt-States, 288 B.R. at 219.

[3]This assignment does not appear on the docket sheet of the Donald V. Nangle bankruptcy case, No. 4:00-BK-41504 (Bankr. E.D. Mo.). State Court Judge Seigel in his Order quashing the executions of 2010 listed as a finding of fact: "On January 13, 2009, Leslie A. Davis, Successor Trustee to Kathy A. Surratt-States, in the matter of the Donald V. Nangle bankruptcy assigned the Brockman Judgment to Jeanne Nangle, wife of Donald Nangle." Brockman Resp., Doc. 404, Ex. 4.

Brockman.[4] On April 1, 2010, Ms. Brockman filed a petition to stay or quash execution in St. Louis County Circuit Court, Judge Mark D. Seigel presiding.

*The Judgment Quashing the 2010 Executions*

On June 2010, Judge Seigel quashed the 2010 executions on Ms. Brockman's properties. Judge Seigel found that the assignment of the Brockman judgment by the bankruptcy trustee was proper, but that the judgment had no value. Judge Seigel stated that Jeanne Nangle did not pursue the judgment within one year of Judge Kressel approving the trustee's settlement, so the time to do so lapsed on January 13, 2010.[5] "The Nangles, through a series of ill-advised assignments and challenges to various Court rulings, have effectively relieved Freda Brockman as being one of their creditors. The Nangles can in no way profit from assigning the Brockman Judgment or executing on the Brockman Judgment." (Order of Judge Mark D. Seigel, St. Louis County Circuit Court, dated June 7, 2010, Doc. 404 at 6-10). Judge Seigel ordered Jeanne Nangle's 2010 executions of Ms. Brockman's property quashed.

*Appeal of the Judgment Quashing 2010 Executions*

On July 6, 2010, defendant Jeanne Nangle filed in the Circuit Court of St. Louis County a notice of appeal of Judge Seigel's June 7, 2010 judgment quashing the executions. The Nangles did

---

[4]These executions and levies were in clear violation of paragraph two of the Court's preliminary order in aid of execution. See Part II, infra.

[5]The Court cannot make sense of this portion of Judge Seigel's ruling. The settlement agreement between the bankruptcy trustee and Jeanne Nangle included a provision allowing Jeanne Nangle "to have a right to request the court to appoint a special 'collection counsel' for the trustee to pursue collection of the judgment at any time *after one year from the date of the execution of the settlement agreement*." Nangle v. Surratt-States (*In re* Nangle), 288 B.R. 213, 219 (B.A.P. 8th Cir. 2003) (emphasis added). The agreement did not require Jeanne Nangle to pursue the judgment within one year of the settlement agreement.

not record a notice of *lis pendens* with regard to the appeal. Nor did the Nangles file any request to stay Judge Seigel's judgment pending appeal.

*The City of Fenton Buys the Property at 715 and 757 Larkin Williams Road*

In the meantime, while Judge Seigel's judgment was still in effect, Ms. Brockman sold some of her property to the City of Fenton. The City purchased the property on the weight of Judge Seigel's judgment, and also purchased title insurance. On the date of the purchase, the City was not aware that the Nangles had appealed Judge Seigel's June 7, 2010 judgment.

The City of Fenton paid $366,266.00 to Brockman for the purchase of 757 Larkin Williams Road and $174,348.03 for the purchase of 717 Larkin Williams Road.[6] The City of Fenton purchased these two properties with the assistance of the Federal Emergency Management Agency, to convert it into green space. The properties sit along the Meramec River and are often flooded. The City had applied for funds to acquire properties located along the Meramec River with the plan to demolish the residential structures located on these flood grounds and use the land to extend the City's open space, parks, and the Meramec Greenway Trail/Park System. The General Warranty Deeds contained various deed restrictions, including that the property shall be maintained as open space for natural floodplain functions.

*Setting Aside Judge Seigel's June 7, 2010 Judgment Quashing the 2010 Executions*

On December 15, 2010, after having filed a notice of appeal of Judge Seigel's judgment, the Nangles filed a motion to set aside the judgment. By this time, the property at 717 and 757 Larkin

---

[6]At the time of sale, 717 Larkin Williams Road was owned by William T. Forgy (likely a relative of Ms. Brockman), and 757 Larkin Williams Road was owned jointly by Ms. Brockman and her son, Gary Bollinger. For simplicity's sake, the Court will refer to the properties as owned by Ms. Brockman. See Doc. 411, ¶¶ 5-6, 30-31.

- 7 -

Williams Road had already been bought from Ms. Brockman by the City of Fenton. In their motion to set aside judgment, the Nangles raised a jurisdictional argument. They argued the executions had been improperly issued in St. Louis County, and should have been transferred to St. Louis City.[7] On January 11, 2011, Judge Seigel agreed and set aside his order quashing the executions on this jurisdictional ground. This order mooted the appeal.

*Jeanne Nangle Buys 717 and 757 Larkin Williams Road*

After the City of Fenton had completed the demolition of the structures located at 717 and 757 Larkin Williams Road, on February 25, 2011, Jeanne Nangle filed executions for these two parcels. The City of St. Louis issued a general execution, and on May 3, 2011, Jeanne Nangle made a credit bid of $5,000.00 for the purchase of 717 Larkin Williams Road and a credit bid of $10,000.00 for the purchase of 757 Larkin Williams Road. The Sheriff of St. Louis County conveyed both properties to Jeanne Nangle by executing a Sheriff's Deed.

*The City of Fenton Files a Quiet Title Action*

On June 22, 2011, the City of Fenton filed an action in St. Louis County against Donald and Jeanne Nangle to quiet title to 717 and 757 Larkin Williams Road. After two years of litigation, the City and the Nangles agreed to mediate their dispute over the property. After approximately eight hours of mediation, the Nangles agreed to accept a $150,000.00 settlement payment in exchange for

---

[7]During the proceedings in front of Judge Seigel in St. Louis County, Ms. Brockman's attorney, Gregory P. White, informed the Court that he believed the executions were improperly issued in the County, and should be transferred to the Circuit Court in St. Louis City. Mr. White was unsuccessful in having the executions transferred to the City, but he did have the executions quashed. As Mr. White states: "Prior to being heard on appeal, Mr. Nangle engaged the services of Tim Rice. Mr. Rice had the Judgment of Seigel set aside using the same argument which I had initially presented. I found myself in the position of defending the decision of Judge Seigel. Judge Seigel set aside his order and the executions were reissued and I moved to have a number of them quashed in the City." Doc. 404 at 12.

quit claim deeds of their interest in the properties. The City's title insurer, Agents National Title Insurance, paid $150,000.00 to Donald and Jeanne Nangle and the Nangles executed quit claim deeds for the properties, which the City recorded.

## II. Discussion

Plaintiffs have filed a first amended motion for creditor's bill and equitable garnishment, seeking to amend and enforce the preliminary order in aid of execution and creditor's bill and equitable garnishment entered by this Court on February 23, 1999. By this mechanism, they seek to collect on their nineteen-year-old judgments by garnishing deceased defendant Arthur G. Muegler, Jr.'s fifty percent interest in the proceeds of the Nangle v. Brockman lawsuit. Plaintiffs seek a judgment lien of $233,700.00 against seven parcels of Ms. Brockman's former property sold to Jeanne Nangle. (Pls.' Mot. at ¶ 27). This amount is based on the appraised value of the two parcels of Ms. Brockman's land sold to the City of Fenton. Plaintiffs ask the Court to declare their judgment lien superior to any and all other claims against the property, including those of Freda Brockman and the City of Fenton. Then plaintiffs want the Court to order the property sold at a public auction, with all proceeds to be paid to them.

### A. The Property at 731 and 817 Larkin Williams Road; 41 and 49 Gravois; and 211 Main Street

In its preliminary order in aid of execution, the Court enjoined and prohibited the Nangle garnishees from "obtaining or receiving any money, property, funds or other value from Garnishee Brockman or from any other party in satisfaction of the aforesaid judgment entered in Nangle v. Brockman." Doc. 313 at ¶ 2. As stated above, the creditor's bill and equitable garnishment was upheld on appeal. Kell v. First Colony Life Ins. Co., 168 F.3d 494 (8th Cir. 1998) (unpublished per curiam). In their supplemental memorandum, the Nangles reargue many of the issues already

decided by this Court and upheld by the appellate court, including whether they received proper notice of the motion for creditor's bill and whether the elements necessary to impose a creditor's bill were established. See Doc. 432, §§ A-G. The Court will not reopen argument on these issues.

Plaintiffs have submitted undisputed evidence that the Sheriff of St. Louis County executed on the Nangle v. Brockman judgment of $112,831.25 (plus $150,912.03 in interest) by selling Ms. Brockman's interest in five properties to Jeanne Nangle. See Sheriff's Deed — General Execution, Doc. 370, Exs. 9-13. Such executions clearly violate the terms of the Court's February 23, 1999 preliminary order in aid of execution, which states:

> Except as set forth herein, Defendant Muegler and Garnishees [Donald and Jeanne Nangle] are temporarily and preliminarily enjoined and prohibited from obtaining or receiving any money, property, funds or other value from Garnishee Brockman or from any other party in satisfaction of the aforesaid judgment entered in Nangle v. Brockman lawsuit[.]

Doc. 313 at ¶ 2.

Ms. Nangle was enjoined and prohibited from obtaining such property from Ms. Brockman by the terms of the preliminary order in aid of execution and of creditor's bill and equitable garnishment. The Court finds Jeanne Nangle in violation of the Court's February 23, 1999 preliminary order in aid of execution and of creditor's bill and equitable garnishment.

B.   The Property at 717 and 757 Larkin Williams Road

On May 3, 2011, Jeanne Nangle bought two properties, 717 and 757 Larkin Williams Road, from Freda Brockman at a sheriff's execution sale and credited Ms. Brockman with the purchase price in satisfaction of the Nangle v. Brockman judgment. See Doc. 411, Ex. 14. Ms. Brockman's ownership of these two parcels was disputed as the City of Fenton had previously purchased the two parcels from Ms. Brockman. See Part I, supra; Doc. 370, Exs. 5-6.

On June 22, 2011, the City of Fenton filed a quiet title action in St. Louis County against Donald and Jeanne Nangle. The City claimed ownership of the 717 and 757 Larkin Williams Road properties. After two years of litigation, all claims between the City of Fenton and the Nangles were settled at mediation in December 2013. In accordance with the settlement, the City of Fenton paid $150,000.00 to settle a quiet title action arising out of the City's purchase of the 717 and 757 Larkin Williams Road properties.

Because Jeanne Nangle's only claim of an ownership interest in the properties at 717 and 757 Larkin Williams Road is through her execution of judgment in Nangle v. Brockman, the proceeds of the settlement of the City of Fenton's quiet title action are properly considered "money, property, funds or other value . . . from any other party in satisfaction of the aforesaid judgment entered in Nangle v. Brockman lawsuit[.]" Preliminary Order in Aid of Execution, Doc. 313, ¶ 2. As such, by the terms of the preliminary order in aid of execution, Jeanne Nangle was enjoined and prohibited from receiving this settlement money.

The Court finds Jeanne Nangle in violation of the Court's February 23, 1999 preliminary order in aid of execution and of creditor's bill and equitable garnishment. Although it is likely that plaintiffs are entitled to fifty percent of the settlement proceeds, the Court does not have before it any motion for contempt or motion for sanctions directed toward Jeanne Nangle.

    C.  Motion for Contempt

The Court finds it unnecessary to grant plaintiffs' first amended motion for creditor's bill and equitable garnishment to the extent it seeks a judgment lien of $233,700.00 against seven parcels of Ms. Brockman's former property sold to Jeanne Nangle. This is because garnishee Jeanne Nangle has clearly violated paragraph two of the preliminary order in aid of execution and creditor's bill and

equitable garnishment as it currently exists, by "obtaining or receiving any money, property, funds or other value from Garnishee Brockman or from any other party in satisfaction of the aforesaid judgment entered in Nangle v. Brockman lawsuit."[8] Doc. 313, ¶ 2.

The United States Supreme Court has stated "it is firmly established that the power to punish for contempts is inherent in all courts." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (internal punctuation and citation omitted). "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 504 (8th Cir. 2000) (citing United States v. United Mine Workers, 330 U.S. 258, 290 n.56 (1947)). Civil contempt sanctions may be employed to coerce compliance with a court order. Id. at 505 (citing United Mine Workers, 330 U.S. at 303-04). "Either incarceration or a fine may accomplish the purpose of coercion, while, where compensation is intended, a fine is imposed, payable to complainant." Id. (internal quotations omitted). The Court's contempt power also extends to non-parties who have notice of the Court's Judgment and the responsibility to comply with it. Id. at 507.

Plaintiffs shall file a motion for contempt to compel compliance with the Court's preliminary order in aid of execution. As part of that motion, plaintiffs shall provide the Court with a detailed

---

[8] The Court notes that Ms. Nangle made an attempt to comply with the preliminary order in aid of execution two years after the executions. On July 22, 2013, Jeanne Nangle filed a motion for leave to deposit certified copies of the deeds to these properties into the registry of the Court. See Doc. 357. In the motion, Ms. Nangle states that "in compliance with this Court's preliminary Order in Aid of Execution and of Creditors Bill and Equitable Garnishment . . . [garnishee Jeanne Nangle] moves for leave of court to deposit into the registry of the Court certified copies of deeds which she has obtained as the successful purchaser at Sheriff's execution sales of [seven] propert[ies] owned, in whole or in part, by garnishee Freda Brockman." Doc. 357. The Court denied the motion because it found that title to the properties was subject to pending quiet title actions in state court. Additionally, the seven properties purchased by Jeanne Nangle at the sheriff's sales were different from the two properties specified in the preliminary order in aid of execution.

calculation of the current balance owed on the 1996 judgments. Plaintiffs state they believe the balance of the principal and interest remaining due on the judgments is approximately $421,161.00. Plaintiffs have not, however, provided the Court with any calculation of the principal balance and interest. Nor have plaintiffs stated what credits they have received upon the balance. The Court notes that it issued several creditor's bills and equitable garnishments, including a garnishment on the proceeds of defendant Muegler's interest in his divorce judgment (Doc. 314), and on defendant Muegler's interest in any claims against the Estate of Rita Glover (Doc. 318). It also appears from the record that plaintiffs received a payout of approximately $44,239.68 in Monticello Group, Inc. v. State Farm Fire and Casualty Company, 4:96-CV-68 CDP (E.D. Mo.) (Docs. 78-80). The Court is unaware whether plaintiffs received any money arising out of their adversary proceeding associated with Muegler's bankruptcy estate. See Bening, et al. v. Muegler, 2:99-AP-700 (Bankr. D. Ariz. Sept. 24, 1999). Also, plaintiff Bening appears to have a pending claim for a judgment in the amount of $400,798.60 against Arthur Muegler's probate estate, the status of which is unclear. See Doc. 378-2.

The parties are advised that the Court is inclined to appoint a receiver for the properties at 731 and 817 Larkin Williams Road, 41 and 49 Gravois Road, and 211 Main Street. The receiver would be tasked with preserving and protecting the property and, if advisable, selling the property pursuant to 28 U.S.C. §§ 2001-2001. See Fed. R. Civ. P. 66. The receiver would be compensated by Ms. Nangle, as she is the party who has violated the preliminary order in aid of execution. As for the properties located at 717 and 757 Larkin Williams Road, the Court has no intention of upsetting the settlement between the Nangles and the City of Fenton. The Nangles' only claim to the properties at 717 and 757 Larkin Williams Road was through their judgment in Nangle v.

Brockman. The settlement proceeds, therefore, were proceeds from collection upon that judgment, and fifty percent of these proceeds belong to plaintiffs through their garnishment of Muegler's contingency fee.

## III. Conclusion

Deceased defendant Arthur G. Muegler, Jr. died owing money to plaintiffs. Plaintiffs' efforts to collect this money during his lifetime were frustrated by various fraudulent transfers and assignments of Muegler and Donald and Jeanne Nangle. Upon a motion for contempt by plaintiffs, the Court can enforce its preliminary order in aid of execution against the property and settlement proceeds the Nangles have collected on the Nangle v. Brockman judgment.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' First Amended Motion for Creditor's Bill and Equitable Garnishment is **GRANTED in part** and **DENIED in part**. [Doc. 370] The motion is **GRANTED** to the extent it seeks a finding that garnishee Jeanne Nangle is in violation of the Court's February 23, 1999 Preliminary Order in Aid of Execution and of Creditor's Bill and Equitable Garnishment, and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs shall file a motion for contempt and for sanctions against garnishee Jeanne Nangle by **April 14, 2015**. Such motion shall include a detailed accounting of the principal and interest remaining due on the Judgments entered in favor of plaintiffs David J. Bening and Alfred W. Harre and against defendant Arthur G. Muegler, Jr. in this case.

**IT IS FURTHER ORDERED** that the Court will set a hearing on plaintiffs' motion for contempt and for sanctions by separate order.

                                                                             **CHARLES A. SHAW**
                                          **UNITED STATES DISTRICT JUDGE**

Dated this  31st   day of March, 2015.